IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN S.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

No. 6:19-cv-00730-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff Karen S. was denied Disability Insurance Benefits under Title II of the Social Security Act. She appeals to this Court, arguing that the Administrative Law Judge ("ALJ") erred by discounting her symptom testimony, improperly weighing treating physician testimony, and incorrectly rejecting "other medical" source opinions. Because the Commissioner of Social Security's ("Commissioner") decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

**STANDARD OF REVIEW**

The Court has jurisdiction under 42 U.S.C. § 405(g). A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Id.*; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: depression; bipolar disorder; and borderline personality disorder. Tr. 18.[2] The ALJ assessed Plaintiff with the following RFC:

> The claimant . . . [can] perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant could have no more than occasional interactive contact with the public, co-workers, and supervisors.

---

[2] "Tr" refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

Tr. 19. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could perform past relevant work as a Research Assistant. Tr. 23–24. Alternatively, the ALJ also found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Tr. 23. The ALJ thus determined that Plaintiff was not disabled. Tr. 24.

**I. Plaintiff's Symptom Testimony**

Plaintiff asserts that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. This testimony can be rejected if there is "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may "consider a range of factors," including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). The Court will uphold an ALJ's credibility finding even if all the ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

Plaintiff testified that she struggled with episodic depression, mania, and mixed mania with depression. Tr. 204. When depressed, Plaintiff reported that she neglected her hygiene and had suicidal ideations. Tr. 204–06. She also testified that she struggled to concentrate, interact with others, and regulate her own emotions. Tr. 204. Plaintiff realized how detrimental changes in routine were for her during her "final year of pharmacy school," of which she graduated with a

doctorate in 2011. Tr. 43, 210. Plaintiff ultimately believed that she could not perform any simple, routine job because she needed constantly to regulate her mental health symptoms. Tr. 54–55.

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. The ALJ further reasoned that although Plaintiff suffered multiple hospitalizations during the time at issue, that was "not a basis for finding the claimant more limited than set forth in the above RFC, especially considering that the claimant achieved a doctorate degree during this time." Tr. 21. The ALJ also found that Plaintiff was generally stable with treatment. Tr. 21 (citing tr. 456). The ALJ noted that while Plaintiff went to the emergency room multiple times in one week because of school related stress, chart notes from those visits showed that Plaintiff was "organized, capable, independent, and not suicidal." Tr. 21 (citing tr. 901). Finally, the ALJ found that even while symptomatic, Plaintiff was still able to complete her doctorate. Tr. 21 (citing tr. 255–57).

The Court is bound to uphold an ALJ's findings if supported by reasonable inferences drawn from the record. *Batson*, 359 F.3d at 1193 (internal citations omitted). The ALJ here focused on Plaintiff's ability to obtain a doctorate in finding that Plaintiff's daily activities were inconsistent with her alleged symptoms. *See* tr. 20–22. Plaintiff asks the Court to recognize that she needed an extra year and many accommodations to complete her degree. Pl.'s Br. 16–17, ECF No. 12 (citing Tr. 47–48, 50, 53, 55). But that does not negate the fact that "even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citations omitted). Plaintiff's own testimony about her daily activities also

supported the ALJ's determination. *See* tr. 205–09. The ALJ found as well that Plaintiff's medical record was inconsistent with her testimony, specifically noting that Plaintiff appeared to respond favorably to treatment. *See* tr. 20–21 (citing tr. 456, 533, 901, 903); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

While Plaintiff presented a rational interpretation of the record, the Court also agrees with the Commissioner that "the ALJ reasonably found that the dichotomy between Plaintiff's allegations and the evidence of record undermined her subjective complaints." Def.'s Br. 7, ECF No. 13. And when faced with a "coin-flip" over an issue of factual interpretation, the Court is bound to defer to the ALJ. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## II. Dr. Phelps' Testimony

Plaintiff next argues that the ALJ erred in discounting the testimony of Dr. James Phelps, Plaintiff's treating physician. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Dr. Phelps, Plaintiff's treating physician, provided an opinion letter in June 2017. Tr. 864–66. Dr. Phelps was asked to discuss Plaintiff's symptoms during the relevant period of 2007 to 2011, during which Dr. Phelps saw Plaintiff at least monthly. Tr. 864. Dr. Phelps diagnosed Plaintiff with comorbid bipolar disorder and borderline personality disorder. Tr. 864. Dr. Phelps opined that Plaintiff's symptoms caused "periods of complete inability to focus her attention out beyond her symptoms" that would make it difficult to attend work consistently. Tr. 864–65. But Dr. Phelps also noted that Plaintiff was intelligent, evidenced by her ability to complete her doctorate in pharmaceutical studies "even when highly symptomatic." Tr. 865. Dr. Phelps

concluded that "the limitations were most apparent when she was in pharmacy school and then trying to work thereafter. Initially, her symptoms themselves were the most obvious concern. Later, symptoms were better controlled, but difficulty functioning became the prominent issue." Tr. 866.

The ALJ only gave some weight to Dr. Phelps' opinion. Tr. 22. The ALJ first noted that Dr. Phelps implied that he had started treating Plaintiff only a few months before her date last insured. Tr. 22. For this reason, the ALJ found that Dr. Phelps likely did not have "personal knowledge" of Plaintiff's functioning during the relevant time. Tr. 22 (citing tr. 864). The ALJ further found that Dr. Phelps' opinion did not support Plaintiff's claim that she could not perform any work, just that she could not perform her past work. Tr. 22. The ALJ concluded that Dr. Phelps' opinion did not prove that "claimant had significant limitations with understanding, remembering, or carrying out instructions." Tr. 22.

To begin, the ALJ erred in determining that Dr. Phelps did not treat Plaintiff during the relevant time. Dr. Phelps was clear that he treated Plaintiff from 2007 to 2011 and there is additional evidence in the record supporting Dr. Phelps' contention. Tr. 22; *see also e.g.,* tr. 411, 581, 397. But this error is ultimately harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination").

The Court agrees with the Commissioner that it appears "the ALJ gave Plaintiff the benefit of the doubt . . . and incorporated [Dr. Phelps'] supported limitations into the RFC." Def.'s Br. 10, ECF No. 13 (citing tr. 19). The ALJ noted that Dr. Phelps' opinion seemed focused on Plaintiff's inability to perform her past work. Tr. 22, 866. And Dr. Phelps opined that Plaintiff could perform routine tasks during a regular workday, it would just take her more effort. Tr. 865. An ALJ must

determine whether a claimant can perform past relevant work at step four, or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). As the vocational expert testified, Plaintiff could perform unskilled occupations that tracked Dr. Phelps' opined limitations. *Compare* tr. 63 (testifying that a hypothetical claimant with significant limitations in public interaction would still be employable in jobs that exist in significant numbers in the economy) *with* tr. 865 (explaining that while Plaintiff needed limited public interaction, she could still complete complex or detailed tasks, even when highly symptomatic).

The Court is bound to uphold an ALJ's findings if they are a rational interpretation of the record. *Batson*, 359 F.3d at 1196. After reviewing Dr. Phelps' medical opinion, it was rational for the ALJ to assign partial weight. Further, even though the ALJ erred in determining when Dr. Phelps treated Plaintiff, this was harmless because the ALJ still incorporated Dr. Phelps' limitations when posing hypotheticals to the vocational expert. *Stout*, 454 F.3d at 1055.

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence in assigning Dr. Phelps' opinion partial weight. *Bayliss*, 427 F.3d at 1216.

### III. "Other Medical" Source Opinions

Plaintiff also argues that the ALJ erred in rejecting the opinions of Sherri Ross and Dale Cox. Both parties agree that these are "other medical" source opinions. Pl.'s Br. 10; Def.'s Br. 10–11. For "other medical" source opinions, an ALJ may reject that testimony for reasons germane to that witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Germane reasons include a finding that the testimony contradicts the medical evidence or a noted inconsistency with a claimant's activities. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

///

**A. Ms. Ross**

Ms. Ross authored an opinion letter in June 2016. Tr. 862–63, 1238–40. Ms. Ross treated Plaintiff from 2003 to 2012. Tr. 862. Ms. Ross stated that while Plaintiff was highly intelligent, Plaintiff struggled in environments that required "multi-tasking, high level interpersonal skills, attention to detail, and quick judgments." Tr. 863. Ms. Ross later clarified that her opinions about Plaintiff applied during the relevant period. Tr. 1238. Ms. Ross concluded that Plaintiff would likely never "be successful in any traditional employment setting." Tr. 863.

The ALJ assigned partial weight to Ms. Ross' opinion. Tr. 21. Specifically, the ALJ found that while Ms. Ross' opinion on Plaintiff's social limitations were accurate, the ALJ gave little weight to the remainder of the opinion for three reasons. Tr. 21. First, the ALJ found that Ms. Ross' opinion was inconsistent with Plaintiff's treatment history of "only three brief hospitalizations between January 2007 and September 2011." Tr. 21. Second, the ALJ noted Plaintiff's ability to complete a doctorate program. Tr. 21. Third, the ALJ found that Plaintiff's medication helped manage her symptoms. Tr. 21.

The Court finds that these are all germane reasons for rejecting Ms. Ross' testimony. The medical record showed that Plaintiff was hospitalized for two days in 2008 (Tr. 396–401); four days in 2009 (Tr. 581–87); and four days in 2011. Tr. 533–35. But upon discharge, Plaintiff displayed normal judgment, mood, and thought processes. *See* tr. 396, 413, 535, 581. And, as noted by the ALJ, Plaintiff still completed a doctorate degree during this time. Tr. 21 (citing tr. 255–57). Finally, there are examples in the record where medication and treatment helped quell Plaintiff's symptoms. Tr. 456 (self-reporting that Plaintiff's medication was effective); *see also* tr. 533, 901, 903. The ALJ rejected Ms. Ross' opinion because the medical record and Plaintiff's daily activities

contradicted Ms. Ross' testimony. These are both germane reasons. *Lewis*, 236 F.3d at 511; *Britton*, 787 F.3d at 1013.

### B. Mr. Cox

Mr. Cox began treating Plaintiff in 2013, two years after Plaintiff's date last insured, and provided a medical opinion in 2017. Tr. 15, 22, 1383. Mr. Cox opined that Plaintiff's attention and concentration were "severely impaired" because of her mental health. Tr. 1383. Mr. Cox concluded that Plaintiff could not work full-time. Tr. 1383. While the ALJ acknowledged Mr. Cox's opinion, the ALJ found that it was outside the adjudicatory period and did not assess its weight. Tr. 22.

Plaintiff contends that the ALJ erred in not considering Mr. Cox's opinion, but the Court disagrees. Plaintiff notes that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Pl.'s Op. Br. 15 (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (citation and quotation omitted)). But *Lester* is not quite on point because the medical evidence there was completed a few months after the date last insured, not several years like Mr. Cox's opinion. *See* 81 F.3d at 832 ("The ALJ's decision also notes that Dr. Taylor's report was completed several months after Lester's last insured date."). And more importantly, Mr. Cox never treated Plaintiff during the relevant time. Because Dr. Cox lacked personal knowledge of Plaintiff's condition during the time at issue, the ALJ did not err in failing to assign Mr. Cox's opinion any weight. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable."); *see also Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1461 n.4 (9th Cir. 1995) ("Any deterioration in [Plaintiff's] condition subsequent to [the time at issue] is, of course, irrelevant.") (quoting *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)).

///

9 – OPINION AND ORDER

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.


DATED this 28th day of September, 2020.

                                             ___s/Michael J. McShane_____
                                             Michael J. McShane
                                             United States District Judge